UNITED STATES DISTRICT COURT
DISTRICT COURT OF MASSACHUSETTS

CIVIL ACTION NO. 10-12049-GAO

SIDEL MOKHTAR BELGHITI,
Plaintiff,

v.

SELECT RESTAURANTS, INC.,
d/b/a TOP OF THE HUB RESTAURANT & SKYWALK
Defendant.

OPINION AND ORDER
March 31, 2014

O'TOOLE, D.J.

## I. Introduction

The plaintiff asserts two primary claims against his former employer Top of the Hub Restaurant ("TOH"). First, the plaintiff contends that TOH violated the Massachusetts Tip Statute, Mass. Gen. Laws ch. 149, § 152A. Second, he alleges that TOH violated the Massachusetts Anti-Retaliation Statute, Mass. Gen. Laws ch. 149, § 148A, by terminating his employment after he asserted his rights under the tip statute.[1] TOH has moved for summary judgment on all claims in the complaint (dkt. no. 33).

## II. Background

The record reveals the following facts: The plaintiff was employed at TOH, which is owned and operated by the defendant, from December 27, 2007 until August 13, 2009. In addition to its regular restaurant service, TOH hosts between 600 and 800 banquet events each

---

[1] The plaintiff also asserts claims for untimely payment of tips in violation of Mass. Gen. Laws ch. 149, § 148, quantum meruit, and unjust enrichment. These claims are derivative of the claim under the tip statute.

year. TOH charges patrons a 14% service charge for banquet events and services. The entire service charge for a banquet event, along with any tips collected, is distributed to the TOH service employees who provided direct customer service at the banquet event.

Starting on or about January 26, 2008, the plaintiff became a "setup" employee at TOH, for which he was paid above the state minimum wage. The plaintiff primarily set up and broke down tables, chairs, and other furniture before, during, and after banquet events held at TOH. The plaintiff also was responsible for maintaining the cleanliness of the TOH facilities, including the restrooms.

Setup employees are not direct customer service employees. As such, they are not necessarily eligible for shares of the tips and service charges collected at TOH banquet events held during their regular work shifts. However, TOH has a banquet event staffing policy whereby setup employees could be assigned to perform some direct customer work as "servers" if and when a TOH manager thought a banquet event was understaffed. Setup employees who did that were deemed to have provided "limited direct customer service." Such duties could include bussing tables, replenishing buffet and coffee stations, running food, passing out hors d'oeurves, and "[o]ther busser and food runner duties as requested by Management." (Def.'s Statement of Material Facts, Ex. 2 at 10 (dkt. no. 35-2).)

Setup employees that provided limited direct customer service during their shift received their usual hourly wage, which, because they were not "tipped employees," was at least the applicable minimum wage, plus a one-half share of the service charges and tips collected at the banquet event. TOH allotted these employees a one-half share of the collected tips and service charges regardless of the actual amount of time a setup employee spent performing direct customer service during the relevant banquet event. To claim this share, setup employees were

required to sign a Function Gratuity Staffing Sheet ("FGS") before the end of the event to document their participation as service employees during their shifts. TOH used the FGS to calculate the value of shares to be distributed to eligible employees for a given event.

The plaintiff claims that he is entitled to a full share of tips and service charges for 527 events. The parties agree that the plaintiff received a one-half share for 146 of these events as to which his name appears on a FGS. However, the defendant denies that the plaintiff worked, as he claims, an additional 381 events for which the plaintiff claims he is due a share of the tips and service charges. Other than the FGS, TOH does not track the precise direct service responsibilities of setup employees, or the amount of time they spend performing limited direct customer service during a shift. TOH provided each employee entitled to a share of a banquet event's service charge with a bi-weekly summary of that employee's shares over the applicable two week period.

The plaintiff lodged complaints with a banquet captain, Mostafa Hadria, about receiving an incorrect share of tips for his work at TOH banquet events and eventually complained to and met with TOH's General Manager. However, the plaintiff's complaints were not resolved to his satisfaction. After the plaintiff had made a number of complaints about not being paid what he was owed, representatives of the defendant met with him to try to resolve the dispute. At a meeting between the plaintiff and TOH executives on August 13, 2009, the plaintiff's employment was terminated. The defendant's justification was that the plaintiff refused to agree to refrain from engaging in disruptive behavior in the workplace. When asked at the meeting to agree to refrain from engaging in such behavior, the plaintiff only reiterated his interest in being paid amounts he claimed he was owed. The defendant's position is that he was terminated

because he would not commit to avoid disruptive behavior. The plaintiff's position is that he was fired for demanding wages he was due.

### III. Standard of Review

Summary judgment is appropriate "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing the basis for its motion and identifying where there exists a lack of any genuine issue of material fact. Id. at 323. A dispute is "genuine" only if a reasonable jury could find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the Court must "view the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

### IV. Discussion

#### A. Violation of the Massachusetts Tip Statute

The plaintiff alleges three violations of the tips statute: (1) the one-half share of service charges given to the plaintiff, on 146 occasions, was not proportional to the service he preformed (2) he was entitled to receive a share of the service charges on 381 other occasions that he worked for TOH and received no share, and (3) the banquet captains and maitre d' should not have received a share of banquet tips, and giving them a share unlawfully diluted the plaintiff's shares.

The plaintiff's first allegation, that he did not receive a share in proportion to the service he provided, calls for an interpretation of the tips statute. Section 152A(d) states:

> If an employer or person submits a bill, invoice or charge to a patron or other person that imposes a service charge or tip, the total proceeds of that service charge or tip shall be remitted only to the wait staff employees, service employees, or service bartenders in proportion to the service provided by those employees.

The statute does not define the term "in proportion," nor prescribe how an employer must determine proportionate shares. The plaintiff contends that a one-half share was not proportionate to the work he performed when he filled in at events in a limited direct customer service role. He complains that he was given a one-half share for every banquet no matter how long he worked or what his responsibilities were during an event. He argues that TOH should have kept track of his work, and his share should have been calculated on his actual performance rather than an estimate.

Rules of statutory construction require the Court to "interpret the statute to be sensible, rejecting unreasonable interpretations unless the clear meaning of the language requires such an interpretation." DiFiore v. American Airlines, Inc., 910 N.E.2d 889, 893 (Mass. 2009) (interpreting Section 152A). Accepting the plaintiff's argument would be unreasonable in the time, effort, and cost; it would require companies to monitor the level of employee activity and would go beyond the ill that the legislature tried to correct by enacting the tips statute. Furthermore, courts in Massachusetts have accepted similar distribution schemes as the one employed by TOH. See Williamson v. DT Management, Inc. d/b/a/ Boston Harbor Hotel, Inc., 2004 WL 1050582, at *11-12 (Mass. Super. Ct. Mar. 10, 2004) (Granting summary judgment to defendant who used a "level" system to determine each servers share; levels were assigned based on past performance and seniority). The system used by TOH, while clearly an estimation, is in conformity with the statute. Servers who provided a higher level of direct customer service received a full share while set-up employees, like the plaintiff, who worked in a limited role for

only part of their time, received a smaller share.[2] This arrangement was lawful under the statutory permission to pay set-up employees "in proportion to the service provided" by them.

The plaintiff's second claim under the tips statute is that he was not paid any share for 381 events that he claims to have worked, but as to which there is no record. The plaintiff will testify that when he was employed as a setup employee, he was systematically assigned to perform limited direct customer service. Therefore, he contends, even though there is no record-keeping evidence of his having done so, the regularity of the practice is enough to permit a jury to conclude he worked at all events held during any time he was at work at TOH. TOH argues that summary judgment is warranted because the plaintiff's general assertion that he must have worked at all events is not sufficient to permit a reasonable jury to conclude that he did.

I agree with the defendant. It is undisputed that TOH had a regular record-keeping procedure for determining when a set-up employee like the plaintiff should receive a share of the service charge along with the regular wait staff. It is also undisputed that on 146 occasions the plaintiff's name was put on the event's FGS, indicating that he had performed some limited direct customer service, and he was accordingly paid a share of the service charge. Nevertheless, he maintains that well over twice as often, he performed such service and his name never made it onto the FGS. That mere assertion, with no other direct or circumstantial evidentiary support, is simply too insubstantial to support by itself, as it is asked to do, a jury's rational conclusion that he worked in the relevant capacity all the time. It is noteworthy that during the course of his employment he received biweekly statements indicating whether he was due a share of a banquet service charge or not, but he made no contemporaneous protest that there were events he worked

---

[2] It is undisputed that as a "set-up" employee, the plaintiff was also paid a full hourly wage while servers, as "wait staff," were paid an hourly rate below minimum wage in light of their status as tipped employees.

in the relevant capacity that were omitted from those summaries. In light of the full record, his bald conclusory assertion is simply insufficient to permit a reasonable jury to find in his favor on this issue.

There is also insufficient evidence to support his other proposition that the banquet captains and maitre d' were not entitled to any shares of the service fee. Employers are not entitled to tips. § 152A(b). An employer includes any person whose primary responsibility is management. Id. The Advisory issued by the Massachusetts Attorney General regarding the Tip Statute provides, in part:

> Managerial responsibilities can include supervising banquet events, making or influencing employment decisions, scheduling shifts or work hours of employees, supervising employees and assigning servers to their posts.

A.G. Advisory 2004/3, at 2. The Advisory also states that "[t]he Attorney General will look to 29 CFR 541.1 (defining the term executive) and relevant law for interpretive guidance to define the term 'managerial responsibility.'" Id. at 2 n.3.

Other than the job title, which is not dispositive, the record contains no evidence that the primary responsibility of the banquet captains and maitre d' was management. In fact the record shows the opposite. The written job description of a banquet captain is that of a high quality server but does not assign that person supervisory or managerial responsibilities or authority. Summary judgment for the defendant is warranted on this issue as well.

B. Violation of the Massachusetts Anti-Retaliation Statute

The plaintiff also claims that he was fired in retaliation for demanding pay under the tips statute. The Massachusetts Anti-Retaliation Statute states that "[n]o employee shall be penalized by an employer in any way as a result of any action on the part of an employee to seek his or her rights under the wages and hours provisions of [Chapter 149]." Mass. Gen. Laws ch. 149, §

148A. The plaintiff has the burden to show the employer's justification was pretext; there must be a causal connection between Plaintiff's action and Defendant's adverse action. Mogilevsky v. Wellbridge Mgmt., Inc., 2012 WL 5941925 at *7 (D. Mass. Nov. 28, 2012). A plaintiff may establish pretext using circumstantial evidence based on the temporal proximity between a plaintiff's action and a defendant's adverse action. Id.; see also Bishop v. Bell Atl. Corp., 299 F.3d 53 (1st Cir. 2002); Mesnick v. Gen. Elec. Co., 950 F.2d 816, 828; Oliver v. Digital Equip. Corp., 846 F.2d 103, 110 (1st Cir. 1988) (discharge soon after protected conduct strongly indicates retaliation). "[C]ourts should exercise particular caution before granting summary judgment for employers on such issues as pretext, motive, and intent." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 54 (1st Cir. 2000). However, summary judgment may be appropriate if the plaintiff's claim is based on improbable inferences or unsupported speculation. Mogilevsky, 2012 WL 5941925 at *5.

There is a material factual dispute as to whether TOH fired the plaintiff in retaliation for his wage claim protests. TOH argues it fired the plaintiff because he refused to agree to refrain from abusive and disruptive behavior in the workplace. The plaintiff did refuse to promise to quit his alleged abusive behavior as a condition of his continued employment, but he also denies that he engaged in the alleged abusive conduct. The plaintiff's employment file has no record of any reprimand or discipline relating to the alleged misconduct, although there are notes in the file documenting some incidents. Regardless, the plaintiff was not confronted by management about any of the incidents until after the plaintiff asserted his payment grievances to TOH management, and was fired in close temporal proximity to when such grievances were expressed to management.

The plaintiff has presented sufficient evidence to warrant a trial on this issue. See Smith v. Winter Place, LLC, 851 N.E.2d 417, 421 (2006). There is a material issue of fact as to whether TOH fired the plaintiff in retaliation for his wage complaints.

### C. Common Law Claims

The plaintiff's complaint also includes claims for quantum meruit and unjust enrichment based on TOH's failure to pay him his share of the tip pool. The Supreme Judicial Court has stated that "[c]ases involving the Tips Act… [is a] situation[] where an employee would have no recognized cause of action but for the [statute's] imposition of obligations on employers." Lipsitt v. Plaud, 994 N.E.2d 777, 785 n. 11 (Mass. 2013) (internal quotations and citations omitted). In other words, there is no recognized common law cause of action for a share of a service charge, only the statutory claim. Therefore, summary judgment is appropriate as to Counts Four and Five.

## IV. Conclusion

For the reasons stated herein the Defendant's Motion for Summary Judgment (dkt. no. 33) is GRANTED in part and DENIED in part. TOH is entitled to summary judgment as to Counts One, Two, Four, and Five of the Complaint. As to Count Three, the motion is DENIED.

It is SO ORDERED.

/a/ George A. O'Toole, Jr.
United States District Judge