UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 10-12049-GAO

SIDEL MOKHTAR BELGHITI,
Plaintiff,

v.

SELECT RESTAURANTS, INC., d/b/a/ TOP OF THE HUB RESTAURANT & SKYWALK,
Defendants.

OPINION AND ORDER
November 12, 2014

O'TOOLE, D.J.

This case arises out of an employment dispute in which the plaintiff claims a right to recover unpaid wages in the form of tips. This Court previously granted summary judgment on Counts One, Two, Four, and Five of the complaint, alleging violation of the Massachusetts Tip Statute, violation of the Massachusetts Timely Payment of Wages Act, quantum meruit, and unjust enrichment, respectively. The Court denied summary judgment on Count Three, alleging violation of the Massachusetts Anti-Retaliation Statute, Massachusetts General Laws Chapter 149, Section 148A. The plaintiff has moved to reconsider the Court's summary judgment ruling as to Counts One and Two only.[1]

The plaintiff had three theories supporting his claim of violation of the tip statute: (1) that the one-half share of service charges that the plaintiff received on 146 occasions was not proportional to the service he actually performed; (2) that he was entitled to receive a share for

---

[1] The summary judgment opinion considered Counts One and Two together, noting that the claim for untimely payment of tips in violation of M.G.L. ch. 149, § 148 was derivative of the claim under the tip statute.

381 additional occasions for which no records of his service existed; and (3) that banquet captains and maitre d's improperly received a share of banquet tips, unlawfully diluting the plaintiff's shares.[2] On reconsideration, the plaintiff asks this Court to reassess the third theory.

The gist of the plaintiff's argument is that while the Court addressed whether, on the factual record presented, a banquet captain could be shown to be an "employer" (and thus ineligible to receive a share of tips) under subsection (a) of Massachusetts General Laws chapter 149, § 152A, the Court did not address whether a banquet captain was excluded from being a "wait staff employee, service employee, or service bartender" under subsection (c) of that statute, which provides in part:

> No employer or person shall cause, require or permit any wait staff employee, service employee, or service bartender to participate in a tip pool through which such employee remits any wage, tip or service charge, or any portion thereof, for distribution to any person who is not a wait staff employee, service employee, or service bartender.

Mass. Gen. Laws ch. 149, § 152A(c).

An "employer" includes any person whose "primary responsibility" is management; a "wait staff employee" is an employee who "serves beverages or prepared food directly to patrons, or who clears patrons' tables" but who "has *no* managerial responsibility." Mass. Gen. Laws ch. 149, § 152A(a) (emphasis added). The Court's prior opinion determined that banquet captains do not meet the statutory definition of an employer, as the summary judgment record failed to reasonably support the conclusion that their *primary* responsibility was management. That opinion did not address whether a banquet captain was a "wait staff employee." If banquet

---

[2] The record appears to treat maitre d's and banquet captains as more or less equivalent. No distinction appearing, this Opinion will use the term "banquet captain" to refer to both.

captains were not wait staff employees, they would not be eligible to participate in a tip pool. The plaintiff argues that the record demonstrates at least a factual dispute as to whether the banquet captains exercised enough supervisory (hence "managerial") authority over other servers so that they would fall outside the statutory definition of "wait staff employee" and thus be ineligible for tip-sharing from a pool under § 152A(c).

As the prior opinion noted, the Massachusetts Attorney General's Advisory on the tips statute provides that:

> Managerial responsibilities can include supervising banquet events, making or influencing employment decisions, scheduling shifts or work hours of employees, supervising employees and assigning servers to their posts.

A.G. Advisory 2004/3, at 2. The Attorney General also looks to 29 C.F.R. § 541.1 for interpretative guidance, id. at 2 n.3, which includes as management activities:

> activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102; see also Matamoros v. Starbucks Corp., 699 F.3d 129, 135-36 (1st Cir. 2012) (noting that the tip statute does not define "managerial responsibility" and looking to the Advisory and 29 C.F.R. § 541.102 for guidance). A job title is relevant but not dispositive, and "the work actually performed by an employee is the most important factor to be considered when determining an employee's proper categorization in a statutory framework." Matamoros, 699 F.3d at 135-36.

An objective measure of the work actually performed by banquet captains for the defendant is the work they were hired to do, as outlined in the job description. As previously noted, that description is one of "a highly qualified server but does not assign that person supervisory or managerial responsibilities or authority." (Summ. J. Op. at 7 (dkt. no. 86).) That description is supported in the summary judgment record by the deposition testimony of Mostafa Hadria, himself a banquet captain. According to him, a manager from the defendant's sales office prepares a plan for a banquet event, which may include designating "setup" workers such as the plaintiff to perform "limited customer service." (Hadria Dep. 129:17-130:25, May 18, 2013 (dkt. no. 53).) A banquet captain may convey the manager's choice to a given worker, but the captain is not a decision-maker. According to Hadria, a banquet captain is more of a team leader than a supervisor. (Id. at 118:8) ("[A] server leader and banquet captain is the same thing."). The picture that emerges from his testimony is that a banquet captain is a bit like a quarterback on a football team. The banquet captain oversees the execution of a plan devised by managers, in which capacity he may give specific directions to other servers as to how to implement the plan. While such activity could be described as "supervision" so as to fall literally within the Attorney General's Advisory or the related federal regulation, it is not consistent with the evident general meaning of those provisions. In particular, there is no evidence that the captains performed such core management functions as hiring, setting wages, maintaining records, recommending promotions, or administering discipline, as outlined in the federal regulation.

The plaintiff relies heavily on deposition testimony of employees who were not banquet captains. That testimony, based on only the employees' impressions, are at base conclusory opinions. For example, David Berndt and Freddy Yauri both considered Berndt to be a supervisor, even though he is identified in the defendant's internal records as a set-up person and janitor. The staff's conclusions about who had what supervisory and other managerial responsibilities appear to be simply their own subjective assessments and are not based on any apparent objective criteria. The testimony is very likely inadmissible under Federal Rules of Evidence 602 (requiring personal knowledge) and/or 701 (establishing criteria for lay opinions). Especially in light of the clear language of the banquet captain's job description and the consistent testimony of at least one banquet captain himself, the testimony of these witnesses is not sufficient to create a genuine dispute of fact to withstand summary judgment.

Similarly, documents the plaintiff identifies as containing supposed admissions by the defendant do not give material support for the proposition the plaintiff claims. In fact, some point decidedly in the other direction. For instance, a document cited by the plaintiff reflects the view of the defendant's upper management that "Mostafa, or any other captain, should not be supervising employees as a captain or head waiter." (Top of the Hub File Mem., Corrected Ex. 39 at 2 (dkt. no. 78).)

Accordingly, I agree with the defendant that the banquet captains are more akin to the "experienced baristas" the Matamoros court found were still eligible as wait staff to share in tips, even though they provided coaching and direction to more junior staff, unlike the "shift supervisors" whose job title was clearly a "supervisory" designation and whose job description explicitly included the direct management of three to six employees. 699 F.3d at 136. The banquet captains in the present case are also distinguishable from those in DePina v. Marriott

Int'l, Inc., where the record showed that it was "undisputed that at least part of their job involved supervising the servers during banquets." No. SUCV200305434G, 2009 WL 8554874, at *11 (Mass. Super. July 28, 2009).

For the reasons stated herein, the plaintiff's Motion and Amended Motion for Reconsideration (dkt. nos. 87 and 90) are DENIED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge